IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PETER SIK KIM, also known as ) <br> PYUNG SIK KIM, ) <br> ) <br> Defendant. ) <br> ) | Case No. CR-07-170-S-BLW <br><br> **SENTENCING MEMORANDUM** |

## BACKGROUND

Defendant Peter Kim ("Kim") was convicted following a jury trial of five counts of trafficking and attempted trafficking in counterfeit goods in violation of 18 U.S.C. § 2320. *Special Verdict Form* (Docket No. 74). He was acquitted of the related conspiracy charge in Count 1. *Id.* The charges arose primarily out of Kim's sale of t-shirts bearing counterfeit trademarks (e.g. Nike, Fox Racing, Tommy Hilfiger, Calvin Klein, etc.) at a flea market in Cascade, Idaho, during the summers of 2005 and 2006. Kim had apparently been selling the t-shirts for approximately five years. However, the Indictment charged sales occurring in 2005 and 2006 only.

**Sentencing Memorandum - 1**

## PRESENTENCE REPORT

The Probation Officer determined that the appropriate sentencing guideline was § 2B.5.3. The guideline established a base offense level of 8 to be enhanced by the relevant specific offense characteristic in § 2B5.3(b). The Probation Officer applied the sentencing enhancement set forth in § 2B5.3(b)(1)(B) which directed that the offense level be increased by the number of levels from the table in § 2B1.1 (theft guideline) corresponding to the infringement amount if that amount exceeded $5,000. The Probation Officer estimated the infringement amount to be $72,011 resulting in an 8-level enhancement. USSG § 2B1.1(b)(1)(E). The Probation Officer then further increased the offense level by 2 additional levels to account for Kim's supervision his wife who worked with him at the flea market. Based on a total offense level of 18, and a criminal history category of I, the resulting guideline sentencing range was 27 to 33 months. The Probation Officer then recommended a 6-level downward departure based on § 2B3.5, comment. (n.4) which provides that a departure may be warranted if the offense level substantially overstates the seriousness of the offense. Thus, the Probation Officer ultimately recommended a sentence of 10 months which was the low end of the guideline range of 10 to 16 months.

As set forth in more detail in the Presentence Report, the Probation Officer

**Sentencing Memorandum - 2**

conservatively estimated the number of counterfeit items in determining the loss amount resulting in an 8-level enhancement.  *PSR* ¶ 28; USSG § 2B1.1(b)(1)(E).  She further determined that the loss for restitution purposes was $22,011.  *PSR* ¶ 27.  However, included in the ultimate recommended restitution figure were legal and investigative expenses of approximately $11,000 incurred by some of the trademark holders.  *PSR* ¶ 29.

## SENTENCING HEARING

The Government had objected prior to sentencing to the Probation Officer's conservative estimate and urged a 10-level enhancement[1] based on its own loss calculations.  The Court noted that the objection to the estimate was well taken and that the loss calculation was probably excessively low.  Nevertheless, the Court found the objection moot given that the amount calculated by the Government was not sufficient to increase the offense level.

On the other hand, the Court overruled Kim's objections to the use of the *infringed* items' retail value rather than the *infringing* items' retail value in calculating the loss.  The infringement amount in most cases is determined by multiplying the retail value of the infringed item by the number of infringing items.

---

[1] A loss of more than $120,000 results in a 10-level enhancement. § 2B1.1(b)(1)(F).

**Sentencing Memorandum - 3**

USSG § 2B5.3, comment., (n.2(A)(i) – (viii)).  The Probation Officer determined that the value of the infringed item was appropriate under (i) because the infringing item was or appeared to a reasonably informed purchaser to be identical to or substantially equivalent to the infringed item.[2]  The Court overruled the objection finding that more than a lay opinion was required to determine that the items were counterfeit.

Kim asserted several other objections many of which were moot.  Of the significant objections, the Court overruled Kim's objection to the failure of the Probation Officer to provide for an adjustment for acceptance of responsibility given that he went to trial.  It also overruled Kim's objection to the 2-level increase in offense level for supervision of his co-defendant and wife in the illegal activity.  *See* USSG § 3B1.1, comment. (n.1) (a participant in the offense need not have been convicted).  *See also United States v. Dota*, 33 F.3d 1179, 1189 (9th Cir. 1994) (an individual acquitted may qualify as a participant in the offense).

Kim also objected to the amount of restitution determined by the Probation Officer.  However, after much discussion on the record, he withdrew his objection.  Accordingly, restitution was set at $33,789 which included the estimated lost sales

---

[2] In any case not covered by subdivision (A) of this application note, the infringement amount is the retail value of the infringing item multiplied by the number of infringing items. USSG § 2B5.3, comment. (n.2(B)).

**Sentencing Memorandum - 4**

amount of $22,011 and $11,778 for legal and investigative fees submitted by some of the trademark holders.

Finally, the Court determined that Kim was entitled to the 6-level downward departure recommended by the Probation Officer given that the offense level substantially overstated the seriousness of the offense. The Court considered that the harm to the business reputation of the trademark owners was not substantial and that the infringement amount substantially exceeded the actual pecuniary harm to the trademark owner. *See* USSG § 2B5.3, comment. (n. 4).

Based on the above, the Court adopted the Probation Officer's Recommendation of an offense level of 12, which, with a criminal history category of I, yielded a guideline range of 10 to 16 months, supervised release of three years, a fine of $6,000, restitution of $33,789, and special assessment of $500.

### 3553(a) FACTORS

The Court then turned to a consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a). The Court first considered the nature and circumstances of the offense and the history and characteristics of the Defendant.

The Court noted that the offense consisted of selling counterfeit brand-name t-shirts at a flea market in a fairly remote location in Cascade, Idaho, approximately 80 miles from Boise, for an amount substantially less than the retail

**Sentencing Memorandum - 5**

value of the genuine counterpart. Although the Government argued that the location of the flea market was designed to attract customers on their way to and from McCall, Idaho, the Court did not feel that this was a situation where potential customers would make a special trip from Boise just to purchase a t-shirt with the logo of one of the trademark owners. Accordingly, the Court found that the sale of the counterfeit t-shirts did not result in a one-for-one loss of sales to the trademark holders.[3]

Turning to the history and characteristics of the Defendant as derived from the Presentence Report and Kim's sentencing memorandum, the Court noted that Kim is 55 years old and was born in Seoul, Korea, where he received an elementary school education. Kim came to the United States in 1982 and eventually became a permanent legal resident. His wife, children, and five siblings are all United States citizens. He has passed his United States citizenship test, and his naturalization application is pending. Kim has been self-employed as a tailor for many years, has no prior criminal history, and has no history of drug or alcohol abuse.

Numerous letters of support and the testimony of two individuals on his

---

[3] However, the Court did recognize that the cumulative effect of numerous individuals throughout the country selling counterfeit items at flea markets and other venues would have a significant detrimental impact on the trademark holders.

**Sentencing Memorandum - 6**

behalf indicated that Kim sincerely wishes to become a United States citizen and that he has been a solid, contributing member of society in this country for many years.  Defense counsel argued that a sentence of a year or more would likely result in Kim's deportation separating him from his wife and family and the life he has built in the United States.  Indeed, defense counsel argued that any sentence more than probation could result in deportation and urged a variance based on potential immigration consequences.

The Court then considered the parsimony factors set forth in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence; to protect the public from further crimes of the Defendant; and to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment.

It was quite apparent to the Court that it is extremely unlikely that Kim would reoffend, thereby obviating the need for specific deterrence or protection of the public.  Likewise, it was apparent that Kim is not in need of any training, medical care, or other correctional treatment.

The Government was concerned with promoting respect for the law and general deterrence.  It noted that there is a general disparity between sentencing

**Sentencing Memorandum - 7**

white collar offenders and, for example, drug offenders that fails to adequately provide general deterrence.  It argued that Kim's offense was, in fact, stealing, and that the public needs to "get the message" that selling counterfeit goods is a serious offense.  However, the Court distinguished this particular white collar crime that individually had little impact on a trademark holder's business from a white collar crime such as investment fraud which has a direct, substantial financial impact on individuals, companies, market systems, and the economy.

Finally, the Court considered the kinds of sentences available, the guideline sentencing range, the need to avoid unwarranted sentence disparities, and the need to provide restitution.

## REASONS FOR SENTENCE

As part of its consideration of the specific § 3553(a) factors, the Court found it significant that there was no evidence that Kim had ever been warned that his conduct was illegal or that any immigration consequences would result.  Indeed, he had sold his counterfeit items, along with other properly trademarked goods, for a number of years without any suggestion that his conduct was unlawful or prohibited.  Given his otherwise exemplary life, all indications were that Kim would have ceased selling the counterfeit items had he been so warned.  Indeed, his character witnesses testified that Kim is very respectful of the laws of this country.

**Sentencing Memorandum - 8**

As the Court opined at the hearing, a civil enforcement procedure for first offenders – such as seizure of the counterfeit items, forfeiture, and imposition of a monetary penalty – would be a more reasonable method of dealing with the widespread problem of selling counterfeit goods. However, to criminally prosecute individuals such as Kim without warning appears to the Court to be entirely disproportionate to the conduct of selling counterfeit t-shirts in a relatively remote area where it is unlikely that he was "stealing" sales from the trademark holders. The problem of black market production of the counterfeit items cannot be rectified by prosecuting individual vendors.

However, it is not the role of the court to tell Congress how to protect the rights of trademark holders and the sanctity of commerce. Congress has not only criminalized the defendant's behavior, but has approved sentencing guidelines for this offense which strongly suggest that incarceration is the appropriate sanction for the defendant's conduct. Therefore, the Court determined that a sentence of probation was too lenient. Rather, some period of incarceration was needed to send the message that taking advantage of those holding trademarks will be punished.

## SENTENCE

After due consideration of the sentencing guidelines and the § 3553(a)

**Sentencing Memorandum - 9**

factors, the Court found, on balance, that a sentence of incarceration of one month to be followed by nine months of home detention on each count, to be served concurrently, was a reasonable sentence.  The Court also imposed the recommended fine of $6,000, a special assessment of $500, restitution of $33,789, and 3-year term of supervised release.  Indeed, the sentence will allow Kim to continue working thereby enabling him to pay restitution.  Were the Court to impose a guideline sentence, Kim would likely be deported thereby depriving his victims of the restitution to which they are entitled.

DATED:  **August 29, 2008**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Sentencing Memorandum - 10**